**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STEEL WORKERS OF AMERICA LOCAL 2660, | Civil No. 09-2223 (JRT/LIB) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ON CROSS SUMMARY JUDGMENT MOTIONS** |
| v. | |
| UNITED STATES STEEL CORPORATION, | |
| Defendant. | |

M. Vance McCrary, David C. Tufts, J. Cecil Gardner, and Mary E. Olsen, **THE GARDNER LAW FIRM, PC**, 210 South Washington Avenue, Mobile AL 36602; Robert D. Metcalf, **METCALF, KASPARI, ENGDAHL & LAZARUS, PA**, 1660 South Highway 100 Number 333, Minneapolis, MN 55416-1573; Stuart J. Miller, **LANKENAU & MILLER, LLP**, 132 Nassau Street, Suite 423, New York, NY 10038, for plaintiff.

Bruce J. Douglas, **LARKIN HOFFMAN DALY & LIDGREN LTD**, 7900 Xerxes Avenue South, Suite 150, Minneapolis, MN 55431-1194, for defendant.

This dispute stems from defendant United States Steel Corporation's ("U.S. Steel") layoff of 313 workers, represented by plaintiff United Steelworkers of America, Local 2660 ("plaintiff"), in the fall of 2008. The layoff fell within the parameters of the WARN Act. 29 U.S.C. § 2101. U.S. Steel failed to provide sixty days of notice of the layoff as required by § 2102(a) of the statute, but moved for summary judgment on the affirmative defense of unforeseeable business circumstances. Plaintiff also moved for summary judgment on the unforeseeable business circumstances defense and the defense

of good faith.  Because the Court finds unforeseeable the depth of the economic crisis that triggered the layoffs, and the unprecedented high demand for steel just prior to the economic downturn would have heavily factored into the decision to delay the plant shutdown, U.S. Steel has shown it acted within the scope of commercially reasonable business judgment.  As a result, the Court grants U.S. Steel's motion for summary judgment.

## BACKGROUND

U.S. Steel operates an iron ore plant in Keewatin, Minnesota (the "Keetac plant").  (Decl. of John E. Skube ¶ 3, Dec. 1, 2010, Docket No 38.)  The Keetac plant produces iron pellets, ninety-seven percent of which are used at two of U.S. Steel's thirteen steelmaking facilities – Granite City Works and Great Lake Works.  (Skube Decl. ¶ 8, Docket No. 38.)  Both facilities' blast furnaces principally produce sheet steel for the construction and automotive industries.  (Decl. of John C. Price ¶¶ 12-13, Dec. 1, 2010, Docket No. 37.)  U.S. Steel measures its profitability on the utilization rate of the steel that comes from its facilities.  (*Id.* ¶ 11.)  "It is generally accepted in the steel industry that for integrated steel producers to operate efficiently and profitably, a rate of capacity utilization in excess of 65% must be maintained on a sustained basis." (*Id.*)  In addition, each individual blast furnace must operate at seventy-five percent capacity to maintain profitability and produce an acceptable quality of steel.  (*Id.* ¶ 14.)  During times of lower demand for steel, U.S. Steel typically would idle the blast furnace at a given facility while

maintaining the actual operation of that facility, resulting in few, if any, layoffs.  (*Id.* ¶ 15.)

In the first three quarters of 2008, U.S. Steel reported some of the highest sales and net income in its history.  (*Id.* ¶ 16.)  As a result of this high demand for steel, U.S. Steel was operating at near full capacity when the U.S. economy experienced a sudden downturn in the fall of 2008.  (*Id.* ¶ 20.)  In response to the downturn, and the uncertainty of demand for steel in the future, U.S. Steel planned to temporarily idle blast furnaces, focusing on those facilities in need of maintenance or other capital investment, along with other measures to reduce costs.  (*Id.* ¶ 29.)  As the economic crisis deepened in November 2008, U.S. Steel initiated a complete idling of the facilities at Granite City Works and Great Lake Works, not just the blast furnaces.  (*Id.* ¶ 35.)  As a result, operations at the Keetac plant were also idled.  (*Id.*)  This idling resulted in the layoffs of the workers represented by plaintiff.

The plan to implement the idling was formulated on November 28 and 29, 2008 by U.S. Steel management.  (*Id.*)  The Executive Management Committee approved the plan on December 1, 2008.  (*Id.*)  The Board of Directors and plaintiff were both notified of the decision on December 2, 2008. (*Id.*, Ex. 3; Skube Decl. ¶ 15, Docket No 38.)  The official WARN Act notice was sent on December 3, 2008 advising that "due to the recent major and unanticipated downturn in the United States and global economy, and the

resultant sharply lower demand for the plant's products[,]" layoffs would occur.[1] (*Id.*, Ex. 1 at 1.) Between December 7 and 21, 2008, U.S. Steel laid off 313 employees at the Keetac plant. (*Id.* ¶ 20.) On January 4, 2009, U.S. Steel recalled 145 of those employees to a nearby plant although they were laid off again around March 1, 2009. (*Id.* ¶ 21.) By December 29, 2009, all the laid off workers had been recalled. (*Id.* ¶ 22.) Both parties agree as to the applicability of the WARN Act requirements to this layoff. Plaintiff alleges U.S. Steel closed the Keetac plant in 2008 in a manner violative of the WARN Act by failing to provide the sixty days notice required under the statute. (Compl. ¶¶ 1-6, Docket. No. 1); 29 U.S.C. § 2102(a).

## DISCUSSION

### I.      STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

---

[1] Where employees are represented by a union, a WARN Act notice is sufficient if the employer notifies the union instead of each represented worker. 29 U.S.C. § 2102(a)(1).

reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.  WARN ACT

The WARN Act was enacted "to protect workers and their families . . . . WARN's notice period was designed to allow workers to adjust to the prospective loss of employment, to seek and obtain alternative jobs and . . . to enter skill training or retraining that will allow [them] to successfully compete in the job market." *Hotel Emps. and Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999) (alteration original) (internal quotation marks omitted) (citing 20 C.F.R. § 639.1(a) (1998)).  Under the WARN Act, "certain large employers who order a plant closing or mass layoff must provide sixty days advance written notice to, among others, affected employees or their union representatives." *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1060 (8th Cir. 1996).  "The thrust of WARN is to give fair warning in advance of prospective plant closings." *Elsinore Shore Assocs.*, 173 F.3d at 182.

However, Congress recognized that exceptions to this general rule were necessary since "supplying generous advance notice would not be possible, or desirable, in all cases." *Loehrer*, 98 F.3d at 1060.  U.S. Steel asserts that one such exception, the unforeseeable business circumstances exception, applies and is a complete defense to its failure to provide sixty days notice in this case.  *See* 29 U.S.C. § 2102(b)(2)(A).

The unforeseen business circumstance exception is "a highly factual inquiry to be assessed on a case by case basis." *Loehrer*, 98 F.3d at 1060.  The employer asserting the

defense "bears the burden of proving that it applies." *Graphic Commc'ns Int'l Union, Local 1B v. Bureau of Engraving, Inc.*, No. 01-1770, 2003 WL 21639146, at *4 (D. Minn. July 7, 2003) (citing *Loehrer*, 98 F.3d at 1060). Regulations on the exception articulate:

> An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control. . . . **[A]n unanticipated and dramatic major economic downturn** might . . . be considered a business circumstance that is not reasonably foreseeable. . . . The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. **The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market**.

20 C.F.R. § 639.9(b) (emphasis added).

The Act still requires an employer to "give as much notice [of the closing] as is practicable" and "a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3). However, it does not impose upon an employer a requirement to provide sixty days of notice or continue in business to its detriment for the sixty day notice period, simply because it is economically feasible or possible to do so. *See Jurcev v. Cent. Cmty. Hosp.*, 7 F.3d 618, 625 (7th Cir. 1993), *cert. denied*, 511 U.S. 1081 (1994); *Teamsters Nat. Freight Indus. Negotiating Comm. on Behalf of Howe v. Churchill Truck Lines, Inc.*, 935 F. Supp. 1021, 1026 (W.D. Mo. 1996). Further, the Seventh Circuit has noted that:

> WARN Act defendants need not show that the circumstances which caused a plant closing or mass layoff arose from out of the blue to qualify for the exception. . . . [A] company, faced with [an] unprecedented cataclysmic event, reasonably [may] need[] a little time to assess how things would

> shake out.  And it [is] not unreasonable for [a] company to think it could survive the carnage until . . . it ran up the white flag of surrender and gave the bad news to its employees.

*Roquet v. Arthur Andersen LLP*, 398 F.3d 585, 590 (7th Cir. 2005) (citing cases where the exception applied despite a dispute of foreseeability).

As a result, courts assessing whether an employer acting with commercially reasonable judgment, do not apply the benefit of hindsight, rather the test is whether the choice of the employer would have "raise[d] the eyebrows of any prudent businessperson."  *Loehrer*, 98 F.3d at 1062.  Courts addressing the applicability of the unforeseen business exception analyze causation, foreseeability, and sufficiency of the notice given.  Causation is not disputed in this case.

### A. Foreseeability

Since the parties agree the layoffs were caused by the sudden economic downturn of fall 2008, the operative question is **when** it was foreseeable that the downturn would affect U.S. Steel such that it knew it would have to lay off workers.  U.S. Steel initiated the layoffs on December 7, 2008.  What U.S. Steel knew sixty days before this date – "the snapshot date" of October 8, 2008 – is determinative as to whether the shortened notice period was permissible.  While the decline in the automobile industry, discussions of the economy in the presidential race, and the bursting of the housing bubble indicate the economic downturn was well-known by that date (*see* Decl. of Bruce J. Douglas, Dec. 1, 2010, Exs. B-D, Docket No. 39), it is not so obvious that the resultant dramatic decrease in demand for steel was so evident.  Notably, the government was considering

the stimulus package[2] and a potential bailout of the auto industry, making predictions on the demand for steel uncertain.  (*See id.*, Exs. A, E.)  Important to the disposition of this case, U.S. Steel was also reporting one of the highest periods of demand for its products in its history.  As a result, U.S. Steel argues it was commercially reasonable for it to believe temporarily idling the blast furnaces at its plants without actually closing the facilities – its usual practice for handling such dips in demand – was a viable option to weather the downturn.

In *Loehrer v. McDonnell Douglas Corp.*, the Eighth Circuit addressed the scope of the business judgment rule in upholding the district court's grant of summary judgment to an employer under the unforeseen business circumstances exception.  The employer, McDonnell Douglas, had a government contract to design and manufacture a new fighter-bomber for the Navy.  *Loehrer*, 98 F.3d at 1057.  The contract was strained by higher than expected costs and decreased commitment by the Navy to the new plane for the better part of a year, yet McDonnell Douglas continued to work on the plane until the moment the Navy officially cancelled the project.  The district court found, and the Eighth Circuit affirmed, that the corporation had "exercised reasonable business judgment in continuing to believe that termination [of the contract] would not occur." *Id.* at 1059-60 (alteration in original).  The applicability of the unforeseen business circumstances exception was deemed appropriate since "negotiations among the contracting parties were progressing favorably toward the end of the year; indeed, the

---

[2] Congress passed the American Recovery and Reinvestment Act of 2009 in February 2009.  Pub. L. No. 111-5, 123 Stat. 115.

[district] court expressly found that, until the last possible minute, the Government and McDonnell Douglas undertook extraordinary measures in an attempt to save the program." *Id.* at 1061.

Further, "it is the probability of occurrence [not the possibility] that makes a business circumstance 'reasonably foreseeable'. . . . A lesser standard would be impracticable." *Halkias v. Gen. Dynamics Corp.*, 137 F.3d 333, 336 (5th Cir. 1998). Here, while the negotiations were between the government and the auto industry, not the government and defendant, clearly the outcome of those negotiations would have a dramatic impact on the demand for steel. Given that the bailout was being discussed on November 19, 2008, it was just as likely as not that it would be passed into law.

Additionally, the historically high demand for steel is a dispositive factor in this case as the foreseeability of a drop in demand is often predicated on recent trends in the particular business. In *Graphic Communications International Union*, the court noted that "boxes and pallets and an exorbitant amount of work [were] sitting at [the] warehouse" on the snapshot date, weighing towards the foreseeability of a drop in demand for the company's products. 2003 WL 21639146, at *4 (internal quotation marks omitted). However, the court **still** found the cancellation of a certain major contract unforeseeable until the moment the employer received notice of the cancellation. *Id.* (finding WARN Act liability for the insufficiency of the notice despite the applicability of the unforeseen business circumstances defense). In contrast here, not only were the government negotiations ongoing on the snapshot date, but U.S. Steel had just finished a record quarter for demand of its products.

Therefore, the Court finds it was unforeseeable, as in *Loehrer*, that the negotiations would fail until the moment they did in fact fail. (*See* Douglas Decl., Ex. D, Docket No. 39 (New York Times article dated November 20, 2008, noting that the auto industry bailout discussions had **just** reached an impasse).) Given that U.S. Steel was balancing the unprecedented high demand for steel and the possibility of the government bailout of the auto industry, the choice to delay plant closings would not have "raise[d] the eyebrows of any prudent businessperson." *Loehrer*, 98 F.3d at 1062. That a decline in the historically high demand for steel was just a **possibility** at the snapshot date, and up until late November 2008, entitles U.S. Steel to the benefit of the statutory exception.

    **B.**    **Sufficiency of Notice**

Plaintiff argues that even if the unforeseen business circumstances exception was available to U.S. Steel, the inadequacy of its notice of the layoffs serves to deprive it of the defense. The WARN Act requires a "brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3). Courts assessing the sufficiency of the notice in cases where employers claim the defense, note that "a company's statement of its basis for a shortened notice period should set forth the underlying factual events which led to the shortened period, thereby allowing workers to understand the employer's situation and its reasons for shortening the notice period." *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 389 (9th Cir. 1994) (finding notice sufficient that stated the employer could "find no one interested in supplying the necessary working capital to keep the company operational").

Notices that simply recite the statutory language are considered insufficient. *Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996) ("By providing that an employer must give a brief statement of the basis for the shortened notice, Congress indicated that it intended something more than a citation to the statute or a conclusory statement summarizing the statutory provision."). Similarly, allusory statements that do not sufficiently define the factual underpinnings of the decision to lay off employees are considered insufficient. *Childress v. Darby Lumber Inc.*, 126 F. Supp. 2d 1310, 1318 (D. Mont. 2001) (noting that that notice was inadequate as it only stated that the company had "sustained tremendous losses" and that the company was forced to make "some serious decisions").

In the instant case, however, the notice stated the layoffs were "due to the recent major and unanticipated downturn in the United States and global economy, and the resultant sharply lower demand for the plant's products." (Skube Decl. Ex. 1 at 1, Docket No. 38.) The Court finds this statement akin to the statement found sufficient in *Alarcon*. Furthermore, the numerous newspaper articles in the record about the status of the economy in fall 2008 indicate that the mention of the "recent major and unanticipated downturn in the United States and global economy" was anything but allusory. As a result, the Court finds the notice in this case sufficient.

### C. Good faith defense

Plaintiff moves for summary judgment on the defense of "good faith." The WARN Act specifies that in cases where an employer is found to have violated the

WARN Act but acted in good faith in an attempt to comply, the Court may limit the damages. 29 U.S.C. § 2104(a)(4). "[T]he 'good faith' defense applies only after a violation of the WARN Act has been established . . . ." *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 408 (D. Minn. 2007). Since the Court finds U.S. Steel did not violate the WARN Act, the issue is moot and the Court denies summary judgment on the motion.

The combination of very high demand for steel and, even when the economy started crumbling, the widely anticipated bailout of the automobile industry are unique factors in this case which cause the Court to find that the unforeseeable circumstances exception to the WARN Act notice requirement applies. The Court grants summary judgment to defendant.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Docket No. 27] is **GRANTED.**

2. Plaintiff's motion for Summary Judgment [Docket No. 30] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 16, 2011            _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                United States District Judge